414 S.E.2d 457

**Lewis H. REXROAD, Plaintiff Below, Appellee,**

v.

**Constance L. REXROAD, Defendant Below, Appellant.**

No. 20154.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided Feb. 7, 1992.

---

William B. Richardson, Sr., William B. Richardson, Jr., Richardson & Richardson, Parkersburg, for plaintiff below, appellee.

D. Clinton Gallaher, IV, Fayetteville, for defendant below, appellant.

MILLER, Justice:

This case is before us on appeal from an order of the Circuit Court of Wood County, dated October 4, 1990, which granted a divorce to Constance L. Rexroad and Lewis H. Rexroad. Mrs. Rexroad appeals the alimony award of $50.00 per week, contending that it is inadequate. For the reasons stated below, we agree and remand this case for an award of additional alimony.

I.

The parties were married on March 26, 1966. Two children were born of the marriage, both of whom were emancipated at the time this action was brought. During the course of the marriage, there were apparently long periods of time during which the parties would not speak to one another except as absolutely necessary. Mr. Rexroad contends that these periods of silence were the fault of Mrs. Rexroad who would, for no apparent reason, often get upset and cease speaking to him. He testified that, initially, he would attempt to determine the cause of the problem and remedy it, but that eventually he got frustrated with these recurring episodes and simply learned to accept them without attempting a remedy.

Mrs. Rexroad contends that she would often attempt to converse with her husband, but that he would be too distracted by the television and not interested in what she was saying to him. She testified that this would make her very upset and that she eventually stopped attempting to converse with Mr. Rexroad and engaged in other activities, such as reading.

On September 4, 1988, Mr. Rexroad left the marital home, following one of these silent episodes of approximately nine months' duration. He subsequently filed for divorce from Mrs. Rexroad on grounds of irreconcilable differences.

During the marriage, Mr. Rexroad was employed as a driver for United Parcel Service. In his financial disclosure statement, dated February 14, 1989, Mr. Rexroad indicated that his base pay per year was approximately $32,000. However, his total income for the preceding year was approximately $42,000. Mr. Rexroad indicated that his net average earnings per month were approximately $1,800; however, with earnings of $42,000 per year, Mr. Rexroad would be earning a gross monthly pay of approximately $3,500. This discrepancy in the yearly earnings is apparently the result of regular overtime pay earned by Mr. Rexroad. Mr. Rexroad testified that he regularly worked more than forty hours per week.

Mrs. Rexroad has been employed on a part-time basis by Sears, Roebuck & Company for approximately twelve years. The family law master found that she had never been offered an advancement by Sears beyond her part-time status. It was also found that she had had a malignancy removed from her breast and was in a high health risk category. On her financial disclosure statement, dated January 24, 1989, Mrs. Rexroad indicated that her gross earnings per year were approximately $10,000, and that her total income for the preceding year was approximately $10,000. She indicated that her net average earnings per month were approximately $605.

The family law master found that Mr. Rexroad's average monthly net income was approximately $1,800 and that Mrs. Rexroad's average monthly net income was approximately $605 and recommended an award of $50.00 per week. Although the family law master did not explain how she arrived at this figure, it is obvious from the findings that she did not take into account

the regular overtime pay earned by Mr. Rexroad. We also infer from the recommended decision, even though it was not explicitly stated, that the family law master considered the fault of Mrs. Rexroad in ordering such an insignificant amount of alimony.

## II.

■ With regard to the inclusion of overtime pay in calculating earnings, our domestic relations law provides for the payment of alimony and child support "to be ordinarily made from a party's employment income and other recurring earnings." W.Va.Code, 48–2–15(a) (1986).[1] Moreover, in W.Va.Code, 48–2–16(b) (1984), the legislature has listed the factors to be considered in making a determination of the appropriate amount of alimony and child support. This list includes "[t]he present employment income and other recurring earnings of each party from any source." W.Va.Code, 48–2–16(b)(3) (1984).

We have not previously had occasion to determine whether overtime pay is a regular part of employment income and, therefore, should be included in the calculation of alimony and child support. In *Stevens v. Stevens,* 186 W.Va. 259, 412 S.E.2d 257 (1991), we recognized that overtime pay could be used in considering total income for purposes of determining child support. We noted that "[w]hile [the husband] claims that overtime [pay] is sparingly offered to him, the documentation supplied to the court rather clearly indicates that he did receive it." 186 W.Va. at 263, 412 S.E.2d at 261.

Other jurisdictions that have had occasion to consider overtime pay have concluded that where it is obtained with some degree of regularity, it should be considered in determining the total employment earnings for purposes of both alimony and child support. *Reyna v. Reyna,* 78 Ill.App.3d 1010, 34 Ill.Dec. 818, 398 N.E.2d 641 (1979); *Goetsch v. Goetsch,* 10 Mich. App. 440, 159 N.W.2d 748 (1968); *In re*

---

1. W.Va.Code, 48–2–15, was amended in 1990 and 1991. The provisions with which we deal in this case, however, remain the same.

*Marriage of Vashler,* 183 Mont. 444, 600 P.2d 208 (1979); *Jones v. Jones,* 472 N.W.2d 782 (S.D.1991).

In *Jones v. Jones, supra,* the record revealed that the husband had averaged about ten hours a week overtime over the past two years. It concluded that the trial court was correct in including this amount in considering child support payments. Without any elaborate discussion, the court noted the distinction "between consistent overtime pay and speculative overtime pay." 472 N.W.2d at 784.

The Michigan appeals court in *Goetsch v. Goetsch, supra,* rationalized the utilization of overtime pay as a part of the defendant's earnings for purposes of determining the amount of child support, stating that if this were not done:

"[it] would enable defendant to continue to enjoy all the additional financial benefits of his overtime employment while requiring the children to undergo a severe reduction in their standard of living in order to conform to his net weekly base pay.... [W]e must agree with the court that overtime pay, when earned during the marital relationship, established a standard of living for the children of that marriage which should not be reduced upon divorce, short of showing that such overtime income is not feasible." 10 Mich.App. at 443–444, 159 N.W.2d at 749.

We agree with our holding in *Stevens v. Stevens, supra,* as well as the holdings in other jurisdictions, that in determining the amount of alimony or child support that may be obtained, consideration may be given not only to regular wages earned, but also to the amount of overtime pay ordinarily obtained.

## III.

With regard to the fault issue,[2] we recently recognized in *Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991), that W.Va.Code, 48–2–15(i) (1986), specifically authorizes consideration of fault in determining an alimony award. The pertinent language of this subsection is:

"In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, *the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.*"[3] (Emphasis added).

In *Charlton,* we also stated that "[e]ven before the adoption of this provision, we had indicated that fault or misconduct could be considered in awarding alimony." 186 W.Va. at 673, 413 S.E.2d at 914. Among the cases cited for this proposition was *Peremba v. Peremba,* 172 W.Va. 293, 304 S.E.2d 880 (1983), which dealt with alimony in a divorce on grounds of living separate and apart. W.Va.Code, 48–2–4(a)(7) (1981). This section provides that in determining alimony, "the court may inquire into the question of who is the party at fault and may award alimony according to the right of the matter." In Syllabus Point 1 of *Peremba,* we interpreted this language to mean:

"When alimony is sought under *W.Va. Code,* 48–2–4(a)(7), the court may consid-

**2.** The family law master stated that the silent episodes were "through the mutual fault of the parties, but with the [wife] bearing the greater burden of fault."

**3.** The remaining text of W.Va.Code, 48–2–15(i) (1986), is as follows:
"However, alimony shall not be awarded in any case where both parties prove grounds for divorce and are denied a divorce, nor shall an award of alimony under the provisions of this section be ordered which directs the payment of alimony to a party determined to be at fault, when, as a grounds granting the divorce, such party is determined by the court:
"(1) To have committed adultery; or
"(2) To have been convicted for the commission of a crime which is a felony, subsequent to the marriage, if such conviction has become final; or
"(3) To have actually abandoned or deserted his or her spouse for six months."
Amendments to W.Va.Code, 48–2–15 in 1990 and 1991 did not substantially alter these provisions. *See* 1991 W.Va. Acts ch. 45; 1990 W.Va. Acts ch. 40.

er substantial inequitable conduct on the part of the party seeking alimony as one factor in its decision. Substantial inequitable conduct is conduct which the trier of fact may infer caused the dissolution of the marriage."

■ *Charlton* also cited *Haynes v. Haynes*, 164 W.Va. 426, 264 S.E.2d 474 (1980). *Haynes* dealt with the irreconcilable differences ground for divorce contained in W.Va.Code, 48–2–4(a)(10) (1981), which authorizes the court to order alimony as may be "just and equitable." We concluded in the Syllabus of *Haynes* that this language authorized a court to consider inequitable conduct as one of the factors in determining alimony:

"*W.Va.Code*, 48–2–4(a)(10) [1977] which provides for a consensual divorce based upon irreconcilable differences allows the court to make a 'just and equitable' award with regard to alimony, and since divorce on this ground is consensual, it is not necessary to find fault or inequitable conduct on the part of the spouse to be charged with an alimony award, although *consideration may be given by the trial court to fault or inequitable conduct as one of many factors to be considered in determining what is 'just and equitable.'* "[4] (Emphasis added).

4. Our cases have recognized that *even though a party is not at fault, alimony can still be awarded* against such party. In Syllabus Point 1 of *F.C. v. I.V.C.*, 171 W.Va. 458, 300 S.E.2d 99 (1982), we stated: "Alimony may be awarded under W.Va.Code, 48–2–4(a)(7) against a 'faultless' party if 'principles of justice' so require, considering the financial needs of the parties and other factors listed in Code, 48–2–16 [ (1969) ]." We emphasized that the "[c]oncrete financial realities of the parties must be a court's primary inquiry in any alimony award." 171 W.Va. at 460, 300 S.E.2d at 101. This observation would certainly retain its validity under our present alimony statute, W.Va.Code, 48–2–16 (1984).

5. The irreconcilable differences ground for divorce, W.Va.Code, 48–2–4(a)(10), was adopted in 1977. *See* 1977 W.Va. Acts, ch. 84. Living separate and apart as a ground for divorce, W.Va.Code, 48–2–4(a)(7), was adopted in 1969. *See* 1969 W.Va. Acts, ch. 49.

■ There is some disparity between the two standards set out in *Peremba* and *Haynes*.[5] Under *Peremba*, the test is substantial inequitable conduct that may be inferred as causing the dissolution of the marriage, whereas, under *Haynes*, the standard is merely "inequitable conduct as one of many factors to be considered in what is just and equitable." In view of the more recent definitional language in W.Va. Code, 48–2–15(i),[6] we believe that the legislature intended to adopt a uniform standard with regard to the role of fault as it bears on alimony. As outlined in note 3, *supra*, W.Va.Code, 48–2–15(i), bars a person from alimony in only three instances: (1) where the party has committed adultery[7]; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final[8]; and (3) where the party has actually abandoned or deserted the other spouse for six months.[9] In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), the "court [or family law master] shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship."

It is clear that the 1984 amendments to W.Va.Code, 48–2–15, altered our prior law which held that if a fault-based ground for divorce was proved against a spouse, that

6. W.Va.Code, 48–2–15(i), was adopted in 1984. *See* 1984 W.Va. Acts, ch. 60.

7. This is a ground for divorce under W.Va.Code, 48–2–4(a)(1) (1981).

8. This ground for divorce is found in W.Va. Code, 48–2–4(a)(2).

9. Abandonment is listed as a ground for divorce in W.Va.Code, 48–2–4(a)(3). The statute uses the phrase "willfully abandons or deserts," which we believe is synonymous to "actually abandoned or deserted." In Syllabus Point 4 of *Gallaher v. Gallaher*, 147 W.Va. 463, 128 S.E.2d 464 (1962), we said:

"'Desertion is a breach of matrimonial duty, and is composed first, of the breaking off of matrimonial cohabitation; and second, an intent to desert in the mind of the offender. Both must combined to make the desertion complete.' Syl. Pt. 1, *Burk v. Burk*, 21 W.Va. 445 [ (1883) ]."

spouse could not obtain alimony. *See* Syllabus Point 3, *Beard v. Worrell*, 158 W.Va. 248, 212 S.E.2d 598 (1974); Syllabus Point 5, *State ex rel. Cecil v. Knapp*, 143 W.Va. 896, 105 S.E.2d 569 (1958). This conclusion arises because W.Va.Code, 48–2–15 enumerates only three fault grounds for divorce which bar alimony, i.e., adultery, willful desertion, and conviction of a felony after the marriage.

 In this case, the family law master found both parties to be at fault, but suggested that Mrs. Rexroad had a greater degree of fault. After a review of the record, we do not agree that the wife had a greater degree of fault. Moreover, there was no finding that such fault was a contributing factor to the deterioration of the marriage as required under W.Va.Code, 48–2–15(i).

We have several cases where there were insufficient findings that the fault contributed to the deterioration of the marriage. For example, in *Goddard v. Goddard*, 176 W.Va. 537, 346 S.E.2d 55 (1986), we reversed the trial court's refusal to grant alimony. The court had found the wife to be at fault, but did not state that such fault contributed to "the breakup of the marriage." 176 W.Va. at 539–40, 346 S.E.2d at 58. In *Nutter v. Nutter*, 174 W.Va. 398, 401, 327 S.E.2d 160, 163 (1985), the wife was denied alimony based on the court's finding that she was at fault. The evidence, however, showed that the parties constantly bickered and that both were at fault. We concluded that the evidence did not show that the wife's fault contributed to the dissolution of the marriage,[10] and remanded the case for entry of an award of alimony.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

**10.** Neither *Goddard* nor *Nutter* referred to W.Va.Code, 48–2–15(i), but both utilized the *Peremba* standard that misconduct must cause the dissolution of the marriage.