475 S.E.2d 457

**Lisa S. ROGERS, Plaintiff Below, Appellant,**

v.

**Robert Alan ROGERS, Defendant Below, Appellee.**

**No. 23075.**

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided July 11, 1996.

Darrell W. Ringer, Morgantown, for Appellant.

Delby B. Pool, Clarksburg, for Appellee.

RECHT, Justice:

Lisa Rogers appeals certain portions of the final divorce order of the Circuit Court of Marion County. On appeal, Ms. Rogers contends that the circuit court made the following errors: (1) failure to divide equitably the marital estate; (2) improper classification of certain housing related payments as fifty (50) percent alimony and fifty (50) percent child support; (3) failure to consider certain payments to Robert Alan Rogers, her former husband, in calculating child support; (4) failure to consider fault in the calculation of alimony resulting in an unjust alimony award; and (5) failure to award her attorneys' fees. Based on our review of the evidence, we find that although Ms. Rogers' first two assignments of error are without merit, the other assignments have merit, and therefore, we affirm the circuit court's decision on the first two assignments of error and reverse the circuit court's decision on the last three assignments of error and remand the case with directions.

## I.

### FACTS AND BACKGROUND

After almost twenty (20) years of marriage, on March 7, 1994, Ms. Rogers, citing Robert Alan Rogers' adulterous conduct, irreconcilable differences and cruel and inhuman treatment, filed for divorce. Mr. and Mrs. Rogers have two daughters, ages 18 and 14 at the time of the separation. In his answer, Mr. Rogers admitted irreconcilable differences. Evidence was presented that ·Mr. Rogers' adulterous conduct contributed to the dissolution of the marriage. Ms. Rogers was awarded custody of the minor child; Mr. Rogers was to have visitation.

The recommended order of the family law master, which was adopted by the circuit court (hereinafter, the final order), noted that Mr. Rogers admitted to an adulterous relationship which, according to the final order, contributed, in part, to the dissolution of the marriage. The final order said that "[a]s a result of her [Ms. Rogers] severe reaction to this situation, plaintiff has suffered psychological and emotional trauma, resulting in her incurring expenses for medical and psychological hospitalization and treatment, not otherwise covered by insurance." [1] The final order, based on income information provided by Mr. Rogers' employer, who is also Mr. Rogers' father, and Ms. Rogers' proposed findings of facts, required Mr. Rogers to pay child support for the parties' minor child in the amount of $455.17 per month. Equitable distribution of marital assets and liabilities was ordered. Temporary payments for utilities, automobile loan installments and automobile insurance made by Mr. Roger during the pendency of the divorce were deemed to be alimony. Temporary payments for the housing loans, land contract, rent, property taxes and insurance were deemed to be half alimony and half child support. Ms. Rogers was granted alimony of $100 per month for five years. Each party was required to pay their own costs, attorneys' fees and half of the family law master's fee.

On appeal, Ms. Rogers contends that the final order contained the following errors: (1) the final order failed to divide the marital assets and liabilities equitably, in that Mr. Rogers was favored by about $11,077.37, Ms. Rogers' lost wages were not considered, no specific values were assigned to household furnishings and no distribution was made of certain bank accounts and a life insurance policy; [2] (2) the final order erred in holding that certain payments ($12,426.92) made by Mr. Rogers during the pendency of the divorce were half alimony and half child support; (3) in calculating Mr. Rogers' income for child support, the final order failed to include monetary and non-monetary payments from Mr. Rogers' father/employer and his girlfriend; (4) the alimony awarded did not properly consider fault or misconduct and, given the circumstances of this case, is not just and equitable; and (5) the final order erred in failing to award Ms. Rogers her attorneys' fees.

## II.

### STANDARD OF REVIEW

■ Recently in Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), we outlined the three-pronged standard of review applied to the findings of facts and conclusions of law made by a family law master that were adopted by a circuit court.

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly

---

1. The final order refers to substantial testimony (over twelve hours) before the family law master concerning Mr. Rogers' adulterous conduct and Ms. Rogers' severe emotional reaction.

2. Although in her brief, Ms. Rogers argues that the final order favored Mr. Rogers by about $11,000, during oral argument, Darrell W. Ring-

er, Esq., Ms. Rogers' lawyer, acknowledged that provided Ms. Rogers' vehicle was valued at $12,-000, a value she had placed on the vehicle, the final order equitably distributed the marital estate. Because of this acknowledgment by Mr. Ringer, we need not address Ms. Rogers' first assignment of error.

erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*In accord* Syl. pt. 1, *Mayhew v. Mayhew*, 197 W.Va. 290, 475 S.E.2d 382 (1996); Syl. pt. 1, *State, Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 466 S.E.2d 827 (1995); *Carter v. Carter*, 196 W.Va. 239, 244, 470 S.E.2d 193, 198 (1996).

Awards of alimony, attorneys' fees and costs are reviewed under an abuse of discretion standard. The Syllabus of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977) states:

> Questions relating to alimony and the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

*In accord* Syl. pt. 2, *Mayhew v. Mayhew*, *supra*; *Banker v. Banker*, 196 W.Va. 535, 547, 474 S.E.2d 465, 478 (1996); *Carter v. Carter, supra*.

Syl. pt. 4 of *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993) states:

> " 'In a suit for divorce, the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion.' Syllabus point 3, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982).

*In accord* Syl. pt. 3, *Mayhew v. Mayhew*, *supra*. In *Yanero v. Yanero*, 171 W.Va. 88, 91, 297 S.E.2d 863, 866 (1982), we stated:

> An award of attorney's fees and costs in a divorce action is a matter within the discretion of the trial court and will not be disturbed on appeal absent a find of abuse of discretion.

**3.** The final order makes no determination concerning any insurance payments made by Mr.

Mindful of our standards of review, we address the four issues remaining in this case to determine if the circuit court abused its discretion.

III.

DISCUSSION

A.

*Designation of Temporary Payments*

In this case, Mr. Rogers was required by the family law master to make temporary payments on the two mortgages on the marital residence, property taxes, utilities, automobile insurance and certain marital debts. In the final order, the circuit court determined that the temporary utilities payments were alimony and that "one half of the payments for installment loan payments, real and personal property taxes are considered alimony and the other one-half as child support." [3] On appeal, Ms. Rogers argues that the circuit court erred in classifying any of these payments as alimony because the alimony classification created "a tax obligation [for her] of thousands of dollars and constitute[s] a considerable unfairness to her."

W.Va.Code 48–2–15(b)(5) (1993) states, in pertinent part:

> The court may require payments to third parties in the form of home loan installments, land contract payments, rent, property taxes and insurance coverage if the amount of such coverage is reduced to a fixed monetary amount set forth in the court's order. When such third party payments are ordered, the court shall specify whether such payments or portions of payments are alimony, child support, a partial distribution of marital property or an allocation of marital debt: Provided, That *if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments made pursuant to this subdivision shall be deemed to be alimony.* (Emphasis added.)

Rogers pursuant to the temporary order.

■ The classification of temporary payments as child support or maintenance/alimony is considered under an abuse of discretion standard. *See* Syl. pt. 4, *Ball v. Willis*. In this case, Ms. Rogers failed to prove that the classification of half of the temporary payments as child support and half as maintenance/alimony is an abuse of discretion.[4] Ms. Rogers' tax consequences argument does not show an abuse of discretion,[5] and, without the final order's classification, all the temporary payments would have been deemed alimony under W.Va.Code 48–2–15(b)(5) (1993).

### B.

### *Child Support*

Ms. Rogers maintains that the circuit court failed to consider certain payments and benefits made to or received by Mr. Rogers in its calculations of child support. Specifically, Ms. Rogers alleges that the additional support (that is monetary and in-kind gifts from Mr. Rogers' father/employer and his girlfriend) Mr. Rogers received should be considered in calculating child support and that Mr. Rogers should not have been given a $365 per month self-support deduction under the Child Support Guidelines.

■ W.Va.Code 48–2–16(b) (1984) requires the consideration of "present employment income and other recurring earnings of each party from any source," along with fourteen other specific factors and one general factor, "in determining the amount of alimony, child support, or separate maintenance." In *Rexroad v. Rexroad*, 186 W.Va. 696, 699, 414 S.E.2d 457, 460 (1992), we found that "the amount of overtime pay *ordinarily* obtained"

(emphasis added) should be considered in determining the amount of child support or alimony. Syl. pt. 1 of *Rexroad v. Rexroad* states: "In determining the amount of alimony or child support that may be obtained, consideration may be given not only to regular wages earned, but also to the amount of overtime pay ordinarily obtained."

In this case, the circuit court based its determination of Mr. Rogers' earnings on the testimony of his father/employer who said that Mr. Rogers earned $52,000 per year. According to Mr. Rogers' father/employer, Mr. Rogers did not "ordinarily" receive any additional money from him. Mr. Rogers' father/employer did acknowledge that on occasion, he gave Mr. Rogers various presents, but these presents varied and were given at the sole discretion of the father.

■ Given the testimony of Mr. Rogers' father/employer, we find no evidence that Mr. Rogers' father/employer was a source of any "recurring earnings" beyond the salary considered by the circuit court. In addition, any gifts received by Mr. Rogers from his girlfriend are too speculative to be considered in determining the amount of child support.

■ Although the gifts that Mr. Rogers received should not be considered in determining the amount of child support, the record indicates that Mr. Rogers is not eligible for a $365 per month self-support deduction in determining the amount of child support. The record contains testimony from both Mr. Rogers' girlfriend and Mr. Rogers indicating that Mr. Rogers is not paying to support himself, but rather receives his room and board from his girlfriend.[6] Although Mr.

---

4. Recently in *Banker v. Banker*, 196 W.Va. at 543, 474 S.E.2d at 473, we noted that in W.Va.Code 48–2–15 (1993), the Legislature's use of the word "maintenance" referred to and included "alimony."

5. Although no abuse of discretion is shown in the classification, on remand the circuit court should consider the economic consequences of this classification in determining the parties' relative positions and in awarding maintenance/alimony.

6. Kim Alonso, Mr. Rogers' girlfriend, gave the following testimony:

Q (Mr. Ringer, Ms. Rogers' lawyer) During the time you and Mr. Rogers have been living together, has he contributed to you for rent or anything else associated with the dwelling?
A (Ms. Alonso) Not really, no.
Q Now, when you say "not really" it sounds as though there may be some qualification in your mind.
A Well, he brings home milk or bread or if we go to dinner once in awhile, he buys or something like that but that's basically it.
Q Milk or bread or pay for dinner out?
A Once in awhile.

Rogers indicated that he was in the process of changing his living arrangements, the amount of child support should not be based on speculation of unconfirmed plans. Given the evidence in the record, it is clear that the circuit court abused its discretion in allowing Mr. Rogers a self-support deduction of $365 in the calculation of child support.

On remand, the circuit court should reduce Mr. Rogers' self-support deduction to reflect his very limited expenses for self-support, and then recalculate the child support with the reduced self-support deduction. If Mr. Rogers' living arrangements have changed, he can seek a modification of the child support award, but a child support award should be based on the circumstances existing at the time of the original hearing before the family law master.

Based on the evidence, we find that gifts from Mr. Rogers' father and girlfriend are not sufficiently "recurring" to be included in the calculation of child support or alimony; however, given Mr. Rogers' living arrangements, we find that he is not entitled to a $365 per month self-support allowance in the calculation of his child support obligation. Therefore, we affirm the final order's finding

of fact concerning Mr. Rogers' income, but we reverse the child support award because Mr. Rogers is not entitled to a $365 per month self-support deduction. We remand the case for a determination of child support reflecting an appropriate self-support deduction in the child support calculation.

### C.

#### *Maintenance/Alimony*

Ms. Rogers maintains that given the circumstances of this case, a maintenance/alimony award of $100 per month for five years is neither just nor equitable. We note that in the final order, both the family law master and the circuit court found that Mr. Rogers' adulterous conduct contributed to the dissolution of the marriage. The record also establishes that Ms. Rogers had a severe emotional reaction to the dissolution of the marriage. Ms. Rogers' reaction was noted as a finding of fact in the final order. Because of her emotional reaction, Ms. Rogers was unable to work during several periods and incurred medical expenses that were not paid by insurance. The parties disagree on the amount of some of those items. Ms.

Q How often is that? I'm not asking you the exact number of times, just your best estimate?

A I know—maybe once every couple of months.

\* \* \* \* \* \*

Q Does he contribute financially to that family unit in any other way?

A No.

\* \* \* \* \* \*

Q Do you give him money?

A Do I like hand him money, is that what you're asking me?

Q Yeah.

A Well, I guess if we're going out to dinner or doing something like that, yes.

Q And again, I'm not—I don't want to nail you down to an exact penny or even an exact dollar figure, but over the course of a couple of weeks or a month, whatever time period's convenient for you, how much money would you say you give him?

A Are you talking about like living expenses, as far as living—I don't mean to confuse—

Q Not specifically, ma'am. I'm just asking you do you give Mr. Roger money from time to time?

A Yes.

Q How much do you give him?

A I really can't say. That's really hard for me to try to—

\* \* \* \* \* \*

Q Does he ever give you money?

A No.

Mr. Rogers gave the following testimony:

Q (Mr. Ringer) $300.00 in food you're spending?

A (Mr. Rogers) Uh-huh (yes.) Yeah.

Q As I recall, Ms. Alonso said she pays for the food; when do you spend $300.00 on food?

\* \* \* \* \* \*

Q What are you spending $300 a month on for food? How do you spend that?

A Like there's times when we would go out to eat. I may pick up—if she doesn't give me the money, I may have to pick up some milk or bread or whatever on my way home. There have been several instances where I took either both of my daughters or one of my daughter and her boyfriend out to dinner over the course of all this.

Q So you're buying food for other people, not yourself with that; is that what you're telling us?

A Well, I eat with them also, but yes.

Q Okay. So you didn't put that down here under entertainment, you put that up there under basic necessities, food?

A Uh-huh (yes).

Rogers estimates that she lost about $22,000 in income, but Mr. Rogers disputes that amount because of Ms. Rogers' disability income. According to Mr. Rogers, in 1992 Ms. Rogers' income was about $36,125; in 1993 her income was about $33,700; and in 1994 her income was about $25,300. Ms. Rogers' emotional reaction began after learning of Mr. Rogers' adulterous conduct in 1993. Mr. Rogers argues that the loss of Ms. Rogers' income should not be considered in the "division of assets in a divorce proceeding."

The record indicates that Ms. Rogers' non-reimbursed medical expenses were between $3,670.48 and $5,820. According to Mr. Rogers, the lower figure is more accurate because of additional insurance payments; however, Ms. Rogers testified that although the billings and insurance was confusing, she thought that the $5,820 figure was only about $1,000 too high. The final order required Ms. Rogers to pay those debts but made no specific determination on which medical expenses directly related to Ms. Rogers' severe emotional reaction. Mr. Rogers argues that because Ms. Rogers incurred these medical expenses post-separation, these debts should not be included in the distribution and evaluation of the net marital assets.[7]

In this case, the record establishes that Ms. Rogers had a severe emotional reaction to Mr. Rogers' conduct, and, as a result thereof, she lost income in 1994 of at least $11,000 (comparing her 1992 income to her 1994 income as stated by Mr. Rogers) and incurred non-reimbursed medical expenses of at least $3,600 (according to Mr. Rogers' medical expense calculation). In addition, because of her limited financial resources, Ms. Rogers has been unable to continue to receive medical help and no longer enjoys the same standard of living she had before the dissolution of the marriage. After finding that Mr. Rogers' conduct contributed to the dissolution of the marriage, the final order awarded Ms. Rogers a total of $6,000 in alimony ($100 per month for five years).

■ W.Va.Code 48–2–15(i) (1993) specifically authorizes the consideration of fault in determining a maintenance/alimony award by stating:

In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, *the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.* However, alimony shall not be awarded when both parties prove grounds for divorce and are denied a divorce, nor shall an award of alimony under the provisions of this section be ordered which directs the payment of alimony to a party determined to be at fault, when, as a grounds granting the divorce, such party is determined by the court:

(1) To have committed adultery; or

(2) To have been convicted for the commission of a crime which is a felony, subsequent to the marriage if such conviction has become final; or

(3) To have actually abandoned or deserted his or her spouse for six months. (Emphasis added.)

In *Rexroad v. Rexroad,* 186 W.Va. at 700, 414 S.E.2d at 461, we discussed when maintenance/alimony is barred and what is "the role of fault as it bears on alimony." Syl. pt. 1 of *Rexroad v. Rexroad* states:

W.Va.Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final; and (3) where the party has actually abandoned or deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), the court *or family law master shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or*

---

**7.** Although we agree with Mr. Rogers that these expenses should not be considered in the distribution of the marital assets, we find that they should be considered in the award of alimony because these expenses are directly related to Ms. Rogers' reaction to Mr. Rogers' adulterous conduct.

*misconduct as a contributing factor to the deterioration of the marital relationship.* (Emphasis added.)

*See Banker v. Banker,* 196 W.Va. at 541, 474 S.E.2d at 471. In *Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991), we noted fault should be considered in the award of alimony. Syl. pt. 1 of *Charlton v. Charlton* states:

> In enacting our equitable distribution statute, the Legislature did not intend fault to be considered as a factor in determining the division of marital property. However, the Legislature did designate marital fault as a factor to be considered in awarding alimony under the provisions of W.Va.Code, 48–2–15(i).

*See* Syl. pt. 1, *Peremba v. Peremba,* 172 W.Va. 293, 304 S.E.2d 880 (1983), *superseded by statute as recognized by, Rexroad v. Rexroad,* 186 W.Va. at 700, 414 S.E.2d at 461 ("court may consider substantial inequitable conduct on the part of the party seeking alimony as one factor in its decision").

We recognize that maintenance/alimony can be awarded even though a party is not at fault. In Syl. pt. 1 of *F.C. v. I.V.C.,* 171 W.Va. 458, 300 S.E.2d 99 (1982), we stated: "Alimony may be awarded under W.Va.Code, 48–2–4(a)(7) against a 'faultless' party if 'principles of justice' so require, considering the financial needs of the parties and other factors listed in Code, 48–2–16." We have also recognized that rehabilitative alimony can be awarded for a limited time to allow a dependent spouse to become self-supporting. *See Wyant v. Wyant,* 184 W.Va. 434, 440, 400 S.E.2d 869, 875 (1990) (listing various family obligation factors to be considered "before opting for rehabilitative alimony over permanent alimony"); *Bettinger v. Bettinger,* 183 W.Va. 528, 542, 396 S.E.2d 709, 723 (1990) (rehabilitative alimony is primarily intended to facilitate gainful employment).

▆▆▆ In this case, the circuit court ordered limited term alimony based on the income of the parties and failed to give sufficient consideration to Mr. Rogers' conduct in determining this limited award. Generally, in appropriate circumstances, an enhancement of an award of maintenance/alimony based on the degree of fault is justified.

Enhancement of a maintenance/alimony award by a fault premium may be awarded when additional support is required to reimburse the injured spouse for expenses directly related to the fault or to assure that the injured spouse continues to have the standard of living enjoyed during the marriage. A fault premium may also be applied to discourage the fault or behavior that lead to the dissolution of the marriage. Generally, in cases involving substantial fault, maintenance/alimony should not be limited to a specific term, because such maintenance/alimony lacks the short term goals of rehabilitative alimony. In determining an award of maintenance/alimony enhanced by a fault premium, the circuit court must consider the concrete financial realities of the parties. *See F.C. v. I.V.C.,* 171 W.Va. at 460, 300 S.E.2d at 101 (the "[c]oncrete financial realities of the parties must be a court's primary inquiry in any alimony award"); W. Va.Code 48–2–16 (1984) listing factors to be considered in "determining the amount of alimony, child support and separate maintenance."

▆▆▆ Given the circumstances of this case, especially Mr. Rogers' conduct and the extraordinary expenses incurred by Ms. Rogers as a result of Mr. Rogers' conduct, we find the circuit court abused its discretion in awarding a total of $6,000 in alimony. Given Mr. Rogers' conduct, the limited term alimony awarded was inappropriate, and on remand, the circuit court should reconsider the relative finances of the parties, including the recalculated child support (*see supra* section III.B. for a discussion of child support), and apply an enhancement factor designed to reimburse as much as possible Ms. Rogers' expenses and to continue as much as possible the standard of living enjoyed by Ms. Rogers during the marriage.

## D.

### *Attorneys' Fees*

Ms. Rogers' final assignment of error concerns the equal splitting of costs and the requirement that each party pay their own attorneys' fees. Ms. Rogers argues that because of her reduced income, she has had to rely on her mother for financial support and

that an award of her attorneys' fees is consistent with the goal of enabling a spouse with limited financial resources to have proper representation.

W.Va.Code 48–2–13(a)(6)(A) (1993) provides:

> The court may compel either party to pay attorney's fees and court costs *reasonably necessary to enable* the other party to prosecute or defend the action in the trial court. The question of whether or not a party is entitled to temporary alimony is not decisive of that party's right to a reasonable allowance of attorney's fees and court costs. An order for temporary relief awarding attorney fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal. (Emphasis added.) [8]

In Syl pt. 14 of *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990), we stated:

> The purpose of W.Va.Code, 48–2–13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees [incurred] [sic] during the course of the litigation.

*In accord* Syl. pt. 3, *Ball v. Wills, supra;* Syl. pt. 5, *Sellitti v. Sellitti,* 192 W.Va. 546, 453 S.E.2d 380, 386 (1994) (per curiam).

We have long recognized that a circuit court has considerable discretion in its award of costs and attorneys' fees. *See* section II. for a discussion of the standards of review, in particular Syl. pt. 4, *Ball v. Wills.*

■ Recently in *Banker v. Banker, supra* we outlined some of the factors to be considered, one of which is the consideration of fault, when determining whether to award attorneys' fees. Syl. pt. 4 of *Banker v. Banker* states:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

■ In this case, the evidence shows that in normal circumstances the parties have unequal incomes, that Ms. Rogers' income was reduced because of her severe emotional reaction to Mr. Rogers' conduct, that the marital assets were limited and that Mr. Rogers' conduct contributed to the dissolution of the marriage. Given these circumstances, we find that the circuit court abused its discretion by requiring Ms. Rogers to pay all of her attorneys' fees. Because Ms. Rogers does have an income and the costs in this case are modest, we find that the circuit court did not abuse its discretion in requiring Ms. Rogers to pay half the costs.

On remand, the circuit court, after considering Ms. Rogers' limited financial resources and Mr. Rogers' fault, should award at least some, if not all, of Ms. Rogers' attorneys' fees. The circuit court may also consider an award of any additional attorneys' fees incurred by Ms. Rogers in prosecuting this appeal.

For the above stated reasons, the decision of the Circuit Court of Marion County is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this opinion.

---

**8.** W.Va.Code 48–2–13(a)(4) (1992) provided that a court could order either party in a divorce action to pay "attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in trial court." Although W.Va.Code 48–2–13(a) was amended in 1993, amendments did not change the provision's purpose.

Affirmed, in part, reversed, in part, and remanded.