474 S.E.2d 593

**William S. ULDRICH, Plaintiff Below, Appellee,**

v.

**Barbara ULDRICH, Defendant Below, Appellant.**

**No. 23036.**

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided July 12, 1996.

---

1. The Appellant alleges several other errors, all of which we find to be without merit.

James Wilson Douglas, Sutton, for Appellee.

George M. Cooper, Sutton, for Appellant.

PER CURIAM.

This is an appeal by Barbara Uldrich (hereinafter "Appellant") from a November 7, 1994, order of the Circuit Court of Braxton County denying alimony and approving a reduction in child support from the amount initially recommended by the family law master. The Appellant contends that the lower court erred in modifying the family law master's recommendation regarding alimony and in approving the reduction in child support from $558 awarded in the family law master's temporary order to $429 awarded in the master's final recommended order. We agree with the Appellant's contention that the lower court improperly denied an alimony award, and we remand for the entry of an alimony order consistent with the findings of the family law master. With regard to the determination of child support, however, we affirm the findings of the lower court.

I.

The Appellant and William S. Uldrich (hereinafter "Appellee") were married on February 2, 1967, and two children were born of the marriage.[1] In March 1992, the Appellee informed the Appellant that the parties would separate for one year and thereafter divorce. On March 25, 1993, the Appellee filed for divorce, claiming mental cruelty, voluntary separation for one year, and irreconcilable differences. By answer dated April 14, 1993, the Appellant admitted voluntary separation and irreconcilable differences, but denied mental cruelty.

By order dated August 9, 1993, the family law master granted the Appellant $558 in monthly child support and the use of the marital home. A final hearing was held before the family law master on November 18, 1993, and an order was entered on December 23, 1993, establishing alimony at $403 per month, the exact amount of the monthly payment due on a GMC vehicle purchased prior to separation for the Appellant's use. The family law master also ordered the Appellee to continue to pay $400 per month in alimony subsequent to the final GMC payment and ordered that alimony be discontinued when the Appellant reached age sixty-two or remarried. The family law master also re-

---

1. The older of the two children was emancipated by the time this action began, and the younger turned 18 on August 5, 1994. Thus, the contested $129 difference in monthly child support is relevant only to approximately 7 months prior to August 5, 1994. The total reduction in child support equals $838.11, according to the Appellant.

duced the child support from $558 to $429 and ordered the Appellee to pay the $171 monthly mortgage payment.

The Appellee filed a petition for review on January 6, 1994, but the Appellant failed to file a petition for review within the ten-day time limitation, pursuant to West Virginia Code § 48A–4–17 (1995).[2] Subsequent to a January 28, 1994, hearing before the lower court, the Appellant received full ownership of the marital home,[3] thereby avoiding a forced sale of the real estate as contemplated by the family law master. Based upon that alteration, the lower court relieved the Appellee of the obligation to pay alimony, reasoning that the $40,000 one-half of the marital home constituted a "lump sum alimony" award.[4] The lower court explained that alimony, "where no fault has been shown on the part of the Plaintiff [Appellee], is inequitable, unfair and unsupported by the evidence. . . ."

On appeal, the Appellant contends that the lower court erred in modifying the family law master's recommendation regarding alimony and in approving the reduction of child support from $558 to $429 per month.

## II.

In syllabus point one of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995), we enunciated the following standard of review: "A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." With regard to findings issued by both a family law master and a circuit court, such as the child support figure in the present case, we explained the following in syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

194 W.Va. at 264, 460 S.E.2d at 265, syl. pt. 1.

West Virginia Code § 48–2–15(i) (1995) governs alimony awards and provides, in pertinent part, as follows:

In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.

In implementing West Virginia Code § 48–2–15(i), we explained the following in syllabus point one of *Durnell v. Durnell*, 194 W.Va. 464, 460 S.E.2d 710 (1995):

"W.Va.Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final; and (3) where the party has actually abandoned or deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), the court or family law master shall consider and compare fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship."

---

2. The Appellee contends that the Appellant waived the right to object to the findings of the family law master by failing to file a petition for review within the appropriate time period.

3. The marital home was valued at approximately $80,000.

4. The lower court awarded the Appellant full legal title to the former marital domicile and considered such award "lump sum alimony" in the amount of $40,000, representing the Appellee's undivided one-half interest in the home. The lower court further directed the Appellee to execute and deliver a good and sufficient deed thereto.

Syllabus point 2, *Rexroad v. Rexroad,* 186 W.Va. 696, 414 S.E.2d 457 (1992).

194 W.Va. 464, 460 S.E.2d 710, syl. pt. 1.

■ We have previously emphasized that the primary standard for the award of alimony is the financial position of the parties. *F.C. v. I.V.C.,* 171 W.Va. 458, 460, 300 S.E.2d 99, 101–02 (1982). We also specifically explained in syllabus point one of *F.C.* that "[a]limony may be awarded under W.Va. Code, 48–2–4(a)(7) against a 'faultless' party if 'principles of justice' so require, considering the financial needs of the parties and other factors listed in Code, 48–2–16." 171 W. Va. at 458, 300 S.E.2d at 99, syl. pt. 1. West Virginia Code section 48–2–16(b), in pertinent part, provides as follows:

> The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered under the provisions of sections thirteen and fifteen of this article, as a supplement to or in lieu of the separation agreement:
>
> (1) The length of time the parties were married;
>
> (2) The period of time during the marriage when the parties actually lived together as husband and wife;
>
> (3) The present employment income and other recurring earnings of each party from any source;
>
> (4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;
>
> (5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;
>
> (6) The ages and the physical, mental and emotional condition of each party;
>
> (7) The educational qualifications of each party;
>
> (8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;
>
> (9) The anticipated expense of obtaining the education and training described in subdivision (8) above;
>
> (10) The costs of educating minor children;
>
> (11) The costs of providing health care for each of the parties and their minor children;
>
> (12) The tax consequences to each party;
>
> (13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
>
> (14) The financial need of each party;
>
> (15) The legal obligations of each party to support himself or herself and to support any other person; and
>
> (16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

We noted in *Haynes v. Haynes,* 164 W.Va. 426, 264 S.E.2d 474 (1980), that "[u]nder the irreconcilable differences ground for divorce, we find that the Legislature intended to eliminate fault as an absolute condition precedent to an alimony award." 164 W.Va. at 430, 264 S.E.2d at 476. We did recognize, however, that fault is one of the factors which may be weighed in determining what amount of alimony would be " 'just and equitable.' " *Id.*

■ Pursuant to these principles, fault cannot be deemed a necessary prerequisite to the award of alimony, and the fact that there is no finding of fault is not alone determinative of whether an award of alimony is appropriate. Once it is determined that alimony is appropriate, however, the calculation of the proper amount of alimony may include financial and other circumstances of the par-

ties, utilizing fault as just one factor in such an analysis.[5]

In the present case, the lower court failed to award alimony based, in part, upon the fact that no fault was proven against the Appellee. We find that the lower court erred in excluding·alimony based upon such absence of fault. The financial circumstances of the parties, as revealed by the record, indicate that the family law master was correct in ordering alimony.[6] The Appellant is forty-nine years of age, earns minimum wage, and, according to the findings of the family law master, is in "questionable" health. The Appellee is employed by Bell Atlantic and earned over $56,900 from January through November 1993, a net of $37,009 for an average monthly net of $3524 including overtime pay. The Appellee introduced evidence contesting the proposition that the overtime pay was regularly earned. The Appellee's employer apparently sought to limit overtime, and the Appellee argued that he would not regularly receive the amounts shown on prior income summaries. The lower court found that his most recent pay checks "corroborate that his overtime hours have been substantially reduced."

In syllabus point one of *Rexroad,* we explained the following: "In determining the amount of alimony or child support that may be obtained, consideration may be given not only to regular wages earned, but also to the amount of overtime pay ordinarily obtained." 186 W.Va. at 697, 414 S.E.2d at 458, syl. pt. 1. The family law master found that the Appellee grossed $56,900 from January through November 1993, and grossed over $52,000 in 1992. The family law master also

found that the Appellee's "past, present, and future income earning ability is greatly disproportionate to that of the ... [Appellant]."

Based upon the disparate income-producing ability of the parties, the length of the parties' marriage, other factors listed above, and the lower court's improper reliance upon fault as a prerequisite for an alimony award, we reverse the decision of the lower court regarding alimony and remand this matter for the entry of an order awarding alimony in the amount determined by the family law master.

### III.

The Appellant also contends that the reduction in child support from $558 to $429 was improper.[7] It appears that this reduction was based upon an estimated net monthly income by the Appellee of $2450. Although a 1993 income summary indicates a net monthly income of approximately $3524, the family law master, based upon the Appellee's assertion that overtime pay previously earned would not continue, engaged in three separate calculations of child support based upon varying estimates of overtime pay. With no overtime, child support was calculated at $362.88; with overtime pay equivalent to that earned in 1993, it would be $590.19; and with only forty hours of overtime monthly, it would be $429.06. The family law master concluded that the third hypothetical was most realistic and awarded child support in the amount of $429.06 per month. We find no error in that determination, and we affirm the decision of the lower court regarding child support.

---

5. We also dealt with the concept that the relative fault of the parties is a factor to be considered in fixing alimony in syllabus point one of *Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991), as follows: "In enacting our equitable distribution statute, the Legislature did not intend fault to be considered as a factor in determining the division of marital property. However, the Legislature did designate marital fault as a factor to be considered in awarding alimony under the provisions of W.Va.Code, 48–2–15(i)." 186 W.Va. at 671, 413 S.E.2d at 912, syl. pt. 1.

6. Under the circumstances of this case, permanent, as opposed to rehabilitative, alimony may

have been appropriate. That issue may be addressed on remand.

7. The parties' minor daughter worked and derived personal income of approximately $200 per month. It does not appear that this amount was utilized in calculating the child support due under the child support formula. The child support guidelines, at 6 W.Va.C.S.R. § 78–16–2.4, do recognize that "[t]he court or master shall deduct from the primary support needs of a child the unearned income of such child." However, earned income is not utilized in the calculation of child support.

Affirmed in part; reversed in part; and remanded.