358 S.E.2d 442

**M.S.P.**

v.

**P.E.P.**

No. 17053.

Supreme Court of Appeals of West Virginia.

June 5, 1987.

Harlen Ray Tiller, Oceanna, Norman Googel, Welch, for appellant.

Paul R. Goode, Jr., Mullens, for appellee.

PER CURIAM:

This is an appeal by M.S.P. from a divorce order entered by the Circuit Court of Wyoming County, which granted the appellee, P.E.P., a divorce and awarded the parties joint custody of their two children, then ages three and five, with physical custody in the appellee.[1] The appellant contends that the trial court erred in not awarding her sole custody of the children after the court made a specific finding that she had been the primary caretaker prior to the parties' separation and failed to make a finding that she was unfit. We agree and reverse and remand for an award of custody of the infant children to the appellant.

The parties were married on February 11, 1978 and lived together as husband and wife in Wyoming County until their separation on March 5, 1985. The appellant filed a complaint alleging mental cruelty and irreconcilable differences and seeking custody of their three-year-old son and five-year-old daughter. In his answer, her husband denied both grounds and filed a "countercomplaint" also alleging mental cruelty and irreconcilable differences, and seeking custody of both infant children.

After a hearing for temporary relief, Mrs. P. was granted temporary custody of the children, $600.00 per month in child support, possession of the family home, medical and dental expenses for the children, attorney's fees and costs, as well as other relief regarding property and debts of the parties.

During the final divorce hearing which spanned three days, each party presented witnesses on the cross claims for mental cruelty and custody of the minor children.

## I

The trial court made a specific finding of fact that the appellant was the primary caretaker of the children prior to March 5, 1985, the date of separation. Witnesses for both parties and the appellee testified that the appellant had taken very good care of the children. The court made no finding that the appellant was unfit to care for the children but made the following statement regarding conditions in appellant's home:

That the moral atmosphere which exists in the home of M[. ] S[. ] P[. ], resulting from visits of her close friends, who are bi-sexual or homosexual, does not appear to be a fit and proper place for the children to reside. There is also an unstable moral atmosphere at the home of the parents of M[. ] S[. ] P[. ]. These allegations were not denied by M[. ] S[. ] P[. ] or her witnesses.[2]

Based on these findings the court awarded the parties joint custody of the children with primary residence with the appellee and reasonable visitation rights for the appellant "but not while male visitors are in her home."

We held in syllabus point 2 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), that "[w]ith reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." A finding of unfitness on the part of the caretaker is thus required to defeat the primary caretaker presumption.

The court's reference to the "moral atmosphere" in appellant's home was based solely on appellee's charge that a man named J.E.[3] had previously been involved in a homosexual relationship and was now in a relationship with the appellant. J.E., after being called as a witness by the appellee, testified that he had been a friend of the appellant since middle or late March and that he regularly visited her on his way to work but had never spent the night at

---

**1.** We adhere to our past practice in styling domestic cases which involve sensitive facts and do not utilize the full names of the parties. *See State ex rel. West Virginia Department of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987); *West Virginia Department of Human Services v. La Rea Ann C.L.*, 175 W.Va. 330, 332 S.E.2d 632 (1985).

**2.** The appellee testified that he had some concern about the appellant's father's interest in young girls. The maternal grandfather lived in Virginia.

**3.** *See* n. 1 *supra,*

her home. He denied having a relationship with the appellant that was more than friendship.

The appellee testified that he knew of J.E.'s sexual orientation from information provided by a man who claimed that he and J.E. had had a sexual relationship. This man was called as a witness by the appellee and denied any such homosexual relationship or that he told the appellee of any relationship. The appellee offered no other proof of the alleged homosexual relationship or any evidence that his children were exposed to such ideas or conduct. The appellee sought custody for the following reason: "I don't like to think that my children are exposed to someone that is a bisexual or homosexual, whatever he is, I don't want my children exposed to this."

■ In syllabus point 4, *J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978), we discussed the relationship between a mother's adultery and her parental fitness.

Acts of sexual misconduct by a mother, albeit wrongs against an innocent spouse, may not be considered as evidence going to the fitness of the mother for child custody unless her conduct is so aggravated, given contemporary moral standards, that reasonable men would find that her immorality, *per se*, warranted a finding of unfitness because of the deleterious effect upon the child of being raised by a mother with such a defective character.

The record contains no evidence that the appellant's relationship with J.E. has had a negative impact on the children. As we stated in *Bickler v. Bickler*, 176 W.Va. 407, 409, 344 S.E.2d 630, 632 (1986), "[e]ven if we assume that the adulterous relationship did, in fact, exist, [footnote omitted] we have repeatedly held that a circuit court may not base a finding of parental unfitness solely on the ground that the parent is guilty of sexual misconduct." The appellee called as witnesses both men whom he alleged to have been lovers and neither man corroborated appellee's statements regarding their relationship nor that J.E.'s relationship with the appellant was more than friendship or was in any way harmful to the children.

The appellee admitted that he had no knowledge of any unhealthy or immoral conduct occurring around his children but stated that: "I don't feel comfortable with my two children, with my little boy, around it, and it is not a healthy situation, and that is the reason that I am fighting for them."

We analyzed the effect of a custodial parent's new relationship on custody in a modification proceeding in *S.H. v. R.L.H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982), and held, in syllabus point 3, in part, that "neither remarriage nor an extramarital relationship *per se* raises any presumption against continued custody in the parent originally awarded such custody." In *Porter v. Porter*, 171 W.Va. 157, 298 S.E.2d 130 (1982), also a custody modification case, we stated "[t]here must also be a showing that the parent's relationship with another adult has a deleterious effect upon the child and that the child will materially benefit from the change of custody." *Id.* 171 W.Va. at 159, 298 S.E.2d at 132.

■ The trial court was of the opinion that the facts regarding J.E.'s prior sexual relationship were true and therefore that his association with the appellant warranted a finding that she is unfit to have custody of her children. Although this conclusion was not proven by a preponderance of the evidence, we further note that no evidence was presented by the appellee to establish that his children were being harmed by J.E.'s contact with the appellant. Adverse effects upon the children must be demonstrated before a divorcing parent's subsequent associations, standing alone, can be the basis for finding a parent who is the primary caretaker, unfit to have custody of her minor children.

The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

Syl. pt. 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975).

"In order to separate a child from its parent on the ground of the unfitness of the parent there must be cogent and convincing proof of that fact." *State ex rel. Kiger v. Hancock*, 153 W.Va. 404, 410, 168 S.E.2d 798, 801–02 (1969). The absence of such proof in this case requires that we reverse and remand for entry of an order awarding custody of the children to the appellant.

## II

The appellant's primary evidence in support of her allegation of mental cruelty was her own testimony that her husband was jealous, possessive and reluctant to let her work outside of the home or leave the house by herself. One of her witnesses testified that just prior to their separation she was present during a heated argument between the parties over the appellant getting a job as a bus driver with the board of education. However, at the conclusion of appellant's evidence, the judge indicated that her grounds were "very weak" and ultimately ruled that the appellant did not meet her burden of proof in establishing mental cruelty.

The appellee's evidence on mental cruelty consisted of testimony regarding appellant's affair with another man prior to the separation of the parties. However, it is unclear from the record when the appellee became aware of this affair. At certain points in his testimony, appellee stated that he learned of her affair sometime in January or early to mid-February and yet continued living with her until March. Then, in response to questions from his attorney, appellee stated that he ceased living with his wife after he became aware of her affair.

The appellee also volunteered that he obtained information concerning his wife and the other man by wiretapping the telephone at his home and intercepting calls between them.[4]

The co-respondent was called as a witness by the appellee and testified that he had had sexual relations with the appellant on two occasions sometime in mid-February, 1985, but could not state the exact dates. Counsel for the appellant moved to strike any evidence regarding adultery since the appellee had not alleged adultery as a ground for divorce in his "counter-complaint." The court denied the motion but invited the appellant to renew the motion at a later time. The motion was not raised again by the appellant.

The appellant testified that the parties, in an effort to resolve their differences, took a room for the night at a Ramada Inn sometime near the end of February. During this stay at the motel, which occurred just prior to their separation, the appellee acknowledged that the parties had had sexual relations.

"We have traditionally held that before conduct of one of the parties to a marriage may be viewed as a cause of the dissolution of the marriage, the conduct must have occurred before the suit to dissolve the marriage has been filed." *Whitmire v. Whitmire*, 175 W.Va. 461, 462, 334 S.E.2d 598, 599 (1985). In order for conduct which occurred prior to the divorce suit to constitute a ground for the divorce, the injured party must have had knowledge of the conduct. "No divorce for adultery shall be granted ... when it appears that the parties voluntarily cohabited after the knowledge of the adultery, ..." *W.Va.Code*, 48-2-14 [1977].

■ If an injured party has knowledge of conduct upon which a divorce could be granted and thereafter lives and cohabits with the offending party, then the injured party cannot use the earlier misconduct as a basis for divorce. "[V]oluntary cohabitation of the parties after knowledge of the adultery charged, whether regarded as condonement or not, is a conclusive defense." *DeBerry v. DeBerry*, 115 W.Va. 604, 606, 177 S.E. 440 (1934).

---

4. No objection was made by the appellant to the testimony derived from the wiretap and therefore the admissibility of such evidence is not before us on appeal. *See* 18 *U.S.C.* §§ 2510 *et seq.*, which relates to the interception of oral and wire communications.

188

▮ In summary, appellee's testimony regarding whether his wife's affair was, in fact, the basis for the couple's separation was inconsistent and contradictory. Because this testimony was the primary evidence in support of appellee's mental cruelty allegation, we find that the appellee failed to establish mental cruelty by a preponderance of the evidence.

'When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.' Point 8, Syllabus, *Bluefield Supply Company v. Frankel's Appliances, Inc.*, 149 W.Va. 622 [, 142 S.E.2d 898] (1965).

Syl. pt. 3, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975).

If the appellee had no knowledge of his wife's affair prior to their separation and the initiation of divorce proceedings, then her adulterous conduct was not the reason for their separation and ultimate divorce. In the alternative, if he was aware of his wife's affair prior to their stay at the Ramada Inn, then the appellee clearly condoned his wife's misconduct, thus barring his assertion of her conduct as a ground for the divorce.

▮ The trial court ruled that the appellee "established grounds for divorce on the basis of his counterclaim." While the court erred in holding that mental cruelty was proven based on the evidence of adultery, we find that the order of divorce should nonetheless be affirmed based on the ground of irreconcilable differences which was alleged by each of the parties. *W.Va. Code*, 48-2-4(a)(10) [1981] provides:

If one party to a marriage shall file a verified complaint, for divorce, against the other, alleging that irreconcilable differences have arisen between the parties, ... and if the other party shall file a verified answer to the complaint and admit or aver that irreconcilable differences exist between the parties, the court shall grant a divorce: ... No corrobora-

tion shall be required of the ground for the divorce ...

Each of the parties by separate, verified pleadings admitted or averred that irreconcilable differences exist.

In *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977), we reviewed a case in which neither party prevailed on the fault grounds litigated in the divorce hearing but we upheld the decree on the ground of two-year separation which both parties had affirmed by amended pleadings filed after the hearing. We found sufficient evidence of corroboration in the hearing record to sustain the subsequent ground for divorce. We also noted that with irreconcilable differences "the Legislature expressly permitted the court to grant a divorce upon the verified answer of the respondent admitting the existence of irreconcilable differences, and stated that 'no corroboration of the grounds of such divorce shall be required' in such case." 160 W.Va. at 613–14, 236 S.E.2d at 455.

The trial court below, just prior to the presentation of evidence, inquired about the grounds for the divorce and then made the following statement regarding irreconcilable differences:

You have both pleaded it in the alternative, so I will leave it open. If there is any direct testimony that irreconcilable differences exist or an admission of it, then, as I understand the law, that is required in order to grant a divorce on the grounds of irreconcilable differences.

The parties' testimony clearly affirmed that each spouse believed the marriage was irretrievably broken. We therefore affirm the divorce order on the grounds of irreconcilable differences and reverse and remand for an award of custody of the infant children to the appellant.

Affirmed in part; reversed in part and remanded.