WRIGHT, Retired Appellate Judge.
The parties were divorced by the Jefferson County Circuit Court on January 19, 1993. The divorce'judgment ratified, approved, and incorporated an agreement entered into between the parties. The agreement provided, among other things, that the mother would have custody of the parties’ three-year-old daughter and that the father would pay $340 per month child support.
On December 9, 1994, the father filed a petition to modify, seeking custody of the minor child on the ground that the mother “is now openly and notoriously cohabiting with and maintaining a sexual relationship with a member of the same sex.” The mother filed a counter-petition, seeking an increase in the father’s child support obligation.
On June 12, 1996, the mother filed a motion, requesting that the trial court appoint an expert to evaluate the child. The trial court entered an order, granting the mother’s motion and appointing Dr. Karen Turn-bow, a psychologist, to evaluate the child. The trial court directed Dr. Turnbow to submit a written report of her findings. The trial court, ex mero motu, also appointed a guardian ad litem to represent the interests of the child.
On August 5, 1996, Dr. Turnbow sent her report to the court, stating that the child is developing normally, that the child desired to live with the mother, and that the biggest threat to the child’s adjustment was the friction between the mother and the father. She also stated as follows:
“On the basis of existing research findings, fears about children of lesbians and gay men being sexually abused by adults, ostracized by peers, or isolated in single-sex lesbian or gay communities are unfounded. All of this research suggests that custody should be determined on individual character and parenting skills, and not on the basis of sexual preference.”
Following oral proceedings, the guardian ad litem submitted a written recommendation to the court, recommending that custody of the child should be given to the father and that the mother’s visitation be exercised “with no overnight guest who is unrelated by blood or marriage.” On September 30,1996, the trial court entered a judgment, stating, in pertinent part:
“2. That the Court finds and is satisfied from all of the competent, material, and relevant evidence that a change of custody will materially promote the welfare and best interests of the minor child ... and will overcome the inherently disruptive effect caused by uprooting the child. ' Therefore, the care, custody, and control of said minor child be, and the same is, hereby changed and awarded to the [father],
[[Image here]]
“4. That the [mother] shall have the following right of visitation with the minor child of the parties:
[[Image here]]
“(k) That the [mother] shall not exercise her right of visitation with the minor child ... in the presence of a person to whom she is not related by blood or marriage.”
The trial court also ordered the mother, among other things, to pay $160 per month child support. The mother filed a motion to alter, amend, or vacate the judgment and a motion to stay the judgment pending an appeal, which the trial court granted. The trial court amended paragraph 4(k) by adding, “Said restriction shall not apply and be considered as being applicable to the general public, casual, professional, platonic, or business relationships.”
*1188 The mother appeals, raising two issues. However, we find the dispositive issue to be whether the trial court erred in finding that the father had met the stringent standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
It is well-established law in Alabama that once a parent has been awarded custody of a child, the noncustodial parent seeking a change in custody has the heavy burden of proving that a change of custody would materially promote the child’s best interests and welfare and that the benefits of such a change would outweigh the disruptive effect caused by the change. Ex parte McLendon, supra; Powell v. Boyd, 601 So.2d 1039 (Ala.Civ.App.1992). It is also well established that following oral proceedings, the judgment of the trial court as to child custody is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong or an abuse of discretion. Powell, supra.
The record reveals the following pertinent facts: The mother has been the child’s primary caregiver since the child’s birth. The child is a bright, happy, well-adjusted seven-year-old girl. She enjoys living with her mother and her mother’s companion, G., and she enjoys visiting with her father and A., her stepmother.
The child sees Dr. Sharon Gotlieb, a psychologist, for problems that she experiences as a result of her parents’ divorce, i.e., sleep disturbances, occasional temper tantrums, and difficulty in getting to sleep before visiting the father. The child expressed to both Dr. Turnbow and to Dr. Gotlieb that she wants to live with her mother and G. She also stated that she loves the mother, G., the father, and A.
The mother is an admitted lesbian. The mother and G. have a committed relationship; they have exchanged rings, and they have lived together since April 1993. The mother has not discussed her relationship with G. with the child, except to say that she loves G. the way the father loves A. The child considers her mother, G., and herself to be a family. The mother and G. both testified that they kiss, hug, and hold hands, but that they do not engage in any other activities because such acts are against the law in Alabama. Both the mother and G. are involved in the child’s education and activities. G. usually takes time off from work to go on field trips with the child, and she goes to the child’s school to eat lunch with the child once or twice a month. The father has not been actively involved in the child’s education or activities.
The father admits that the mother is a good mother and that she has done a good job of raising the child. He has no problems with the child’s development, and he feels that the child is well-cared for, is well-fed, and is doing well at school. The father also admits that he has never discussed with the mother any problems or concerns that he has regarding the child.
The father testified that he decided to file for custody after having a conversation with the child. He testified that the child told him that she had wet the bed and that she had gone to G.’s room to ask her mother to change the sheets. The father also testified that while the child was playing with Barbie dolls, she told him that girls could marry girls and that boys could marry boys and that when he asked her who told her that, she replied her mother had.
The father testified that in August 1995, he took the child to the Alabama Institute of Pastoral Counseling, because, he says, the child repeatedly touched herself and that twice, during play, she grabbed A.’s breast and called it tickling. He also said that the child had difficulty going to sleep, which he said was unusual for the child..
Dr. Daniel McKeever III, a pastoral counselor, testified that he works for the Lloyd Noland Hospital system in its Alabama Institute of Pastoral Counseling. McKeever is the clinieal director of the Institute. He stated that the father and A. reported their concerns that the child had been sexually abused. McKeever assessed the child in August 1995. He testified that, based on watching the child play, he determined that the child was aggressive and angry and that her behavior indicated that she had been sexually abused. Thereafter, a female therapist saw *1189 the child until MeKeever learned that the child was already being seen and treated by Dr. Gotlieb. On cross-examination, Dr. MeKeever admitted that the child’s aggressive play and anger could have been the result of being taken to a second therapist while she was seeing Dr. Gotlieb.
Both Dr. Gotlieb and Dr. Turnbow found that the mother’s relationship with G. has not adversely affected the child, that the child is comfortable with her living situation, and that the child wants to live with her mother. They also stated that relevant psychological research reveals no evidence to suggest that lesbians and gay men are unfit to be parents or that psychological development among offspring of gay men or lesbians is compromised in any respect relative to that among heterosexual parents. Both stated that there is no indication that the child had been sexually abused or exposed to sexual acts. Dr. Turnbow reported that the child denied being touched inappropriately and witnessing any acts between adults that were upsetting or confusing to her. Dr. James Collier, a clinical psychologist at the Brewer’s Porch Children’s Center at the University of Alabama, testified that empirical studies reveal no adverse difference between children raised by a lesbian couple and those raised by a heterosexual couple. He also stated that the problems of rejection and difficulties with peer groups occur with the same frequency and intensity with children raised by a heterosexual couple as those raised by a lesbian couple. Dr. Collier further stated that after reviewing the child’s records, he concluded that there is no indication that the child was sexually abused.
“The courts of Alabama have emphasized that a change of custody from one parent to another is not a decision to be made lightly; on the contrary, it may be made only where the evidence discloses an obvious and overwhelming necessity for change.” Ex parte Peppers, 703 So.2d 299 (Ala.1997).
In custody cases, indiscreet behavior, such as living with someone of the opposite sex without the benefit of marriage, is a factor to be considered; however, there must be a showing that such misconduct has a substantial detrimental effect on the child. Phillips v. Phillips, 622 So.2d 410 (Ala.Civ. App.1993). Such misconduct is not itself evidence of a substantial detrimental effect on a child. Id. There appears to be no difference between a parent living with someone of the opposite sex without the benefit of marriage and a parent living in a committed relationship with someone of the same sex. Courts of other states have written to this issue and have adopted a standard which requires that before awarding to the other parent or removing custody, one must show that the parent’s sexual orientation/preference has a detrimental effect on the child. S.N.E. v. R.L.B., 699 P.2d 875 (Alaska 1985) (modification of custody); In re: Marriage of Birdsall, 197 Cal.App.3d 1024, 243 Cal.Rptr. 287 (Cal.Ct.App.1988) (initial custody); In re Marriage of R.S., 286 Ill.App.3d 1046, 222 Ill.Dec. 498, 677 N.E.2d 1297 (1996) (modification of custody); Doe v. Doe, 16 Mass.App. Ct. 499, 452 N.E.2d 293 (1983) (modification of custody); White v. Thompson, 569 So.2d 1181 (Miss.1990) (modification of custody); M.P. v. S.P., 169 N.J.Super. 425, 404 A.2d 1256 (1979) (modification of custody); A.C. v. C.B., 113 N.M. 581, 829 P.2d 660 (App.1992) (modification of custody); Anonymous v. Anonymous, 120 A.D.2d 983, 503 N.Y.S.2d 466 (1986) (initial custody); Pulliam v. Smith, 124 N.C.App. 144, 476 S.E.2d 446 (1996) (modification of custody); Whaley v. Whaley, 61 Ohio App.2d 111, 399 N.E.2d 1270 (1978) (modification of custody); Fox v. Fox, 904 P.2d 66 (Okla.1995) (modification of custody); A. v. A., 15 Or.App. 353, 514 P.2d 358 (1973) (modification of custody); Blew v. Verta, 420 Pa.Super. 528, 617 A.2d 31 (1992) (modification of custody); Stroman v. Williams, 291 S.C. 376, 353 S.E.2d 704 (App. 1987) (initial custody); Van Driel v. Van Driel, 525 N.W.2d 37 (S.D.1994) (modification of custody); Tucker v. Tucker, 910 P.2d 1209 (Utah 1996) (initial custody); Nickerson v. Nickerson, 158 Vt. 85, 605 A.2d 1331 (1992) (initial custody); Schuster v. Schuster, 90 Wash.2d 626, 585 P.2d 130 (1978) (modification of custody); M.S.P. v. P.E.P., 178 W.Va. 183, 358 S.E.2d 442 (1987) (initial custody). Contra S.E.G. v. R.A.G., 735 S.W.2d 164 (Mo.Ct.App.1987); Dailey v. Dailey, 635 S.W.2d 391 (Tenn.Ct.App.1981); Bottoms v. Bottoms, 249 Va. 410, 457 S.E.2d 102 (1995). *1190 We agree with Dr. Turnbow’s statement that “custody should be determined on individual character and parenting skills, and not on the basis of sexual preference.” We conclude that it was the burden of the father to present evidence that the relationship of the mother with G. was so affecting the best interests and welfare of the child that a change of her custody to the father would materially promote her best interests and welfare. Ex parte Murphy, 670 So.2d 51 (Ala.1995); Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). We find that the father failed to carry that burden. Our review of the record reveals the opposite is true — the child is thriving, and she is happy and well-adjusted. We conclude that it cannot reasonably be said that removing a seven-year-old girl from the custody of a loving and caring mother, with whom she has lived all of her life, so promotes the best interests of the child to overcome the obviously detrimental effect of a change in custody. It is evident from the testimony that such a change of custody was entered solely because of a lesbian relationship of the mother. Therefore, we find that the trial court’s change of custody is so unsupported by the evidence as to be plainly and palpably wrong.
The judgment of the trial court is reversed, and this cause remanded for the entry of a judgment consistent with this opinion.
The mother’s request for an attorney fee is granted in the amount of $1,000.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and CRAWLEY, J., concur.
YATES and MONROE, JJ., concur in the result.
THOMPSON, J., dissents.