497 S.E.2d 203

**Sharon M. HASTINGS, Appellant,**

v.

**Thomas A. HASTINGS, Appellee.**

No. 24034.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1997.

Decided Dec. 16, 1997.

David J. Sims, Yahn & Sims, Wheeling, for the Appellant.

Gregory A. Gaudino, Petroplus & Gaudino, Wheeling, for the Appellee.

### PER CURIAM: [1]

Sharon M. Hastings (hereinafter "Appellant") appeals a June 19, 1996, decision of the Circuit Court of Ohio County adopting the family law master's recommended order regarding divorce and distribution of property. The Appellant raises multiple assignments of error. We affirm in part, reverse in part, and remand.

### I.

The Appellant and her former husband, Thomas A. Hastings (hereinafter "Appellee"), were married on October 15, 1983, and two children were born of the marriage. Thomas, born January 18, 1984, is presently thirteen years of age, and Jenna, born March 4, 1986, is presently eleven years of age. On May 4, 1994, the Appellant filed for divorce, alleging irreconcilable differences and other fault based grounds for divorce, including cruel and inhuman treatment, habitual drunkenness, habitual use of narcotics or dangerous drugs, and abuse and neglect of the parties' children. Final hearings before the family law master were held in May and August 1995. Although both parties were instructed by the family law master to submit recommended orders, Appellant's counsel failed to submit the requested recommended order. The family law master thereafter adopted the recommended order, verbatim, submitted by the Appellee's attorney, and granted the divorce on the grounds of irreconcilable differences, admitted by both parties. The family law master found that the evidence did not establish cruelty, habitual drunkenness, habitual use of drugs, or abuse or neglect of the children.

Subsequent to the Appellant's petition for review, the lower court held a hearing and affirmed the family law master's recommended order, by a thorough twenty-seven page order dated June 19, 1996. The Appellant was awarded the care, custody, and control of the children subject to the Appellee's rights of visitation, and the Appellee was ordered to pay child support in the amount of $825 per month. The Appellee was also ordered to pay alimony of $240 per month for five years. The Appellant, raising multiple issues, now seeks reversal by this Court.

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) ("Per Curiam opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Court of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.")

## II.

### STANDARD OF REVIEW

 In syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), we explained:

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

We also specified as follows in the syllabus of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977): "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused."

## III.

### FAULT

 The Appellant contends that the Appellee's problems with alcohol consumption contributed to the disintegration of the marriage, and the Appellant introduced evidence regarding behavioral problems experienced by the children as a result of their father's drinking habits. The Appellant's sister, Rose Halverson, for example, testified that the Appellee was expected to pick the children up at Ms. Halverson's home at five p.m. one evening. He was late to pick up the children, and when he did arrive, he was intoxicated. Ms. Halverson would not allow the children to ride with him. The Appellant also introduced evidence indicating that the Appellee failed to appear for family dinners and parties due to his alcohol consumption. The Appellant's uncle also testified that he occasionally saw the Appellee drinking in bars and that the Appellee was intoxicated on most of those occasions.

The Appellant also explained that as the Appellee's alcohol problems worsened and the relationship deteriorated, she began to suffer from an anxiety disorder and depression. She sought treatment from Dr. David Singer, a psychologist, and was diagnosed as being co-dependent and suffering from anxiety and depression.[2]

During the final hearing before the family law master, the Appellant posed a question regarding the effect of fault on the amount of alimony awarded. The family law master responded to that question as follows: "Fault really has no bearing on how much alimony is ordered."[3] The Appellant contends that this exchange regarding the irrelevance of fault precluded her from introducing additional and more extensive evidence of the Appellee's alleged habitual drunkenness.

 In her final recommended order, the family law master found that "[t]he evidence does not establish ... habitual drunkenness" and that the Appellant's demand of complete abstinence from alcohol became a continuing source of disagreement between the parties. "In any event," the family law master continued, "the [Appellant] admitted several acts of condonation...." The family law master thereafter noted several acts of sexual intercourse which allegedly demonstrated the Appellant's condonation of the Appellee's drink-

---

2. Dr. Singer also opined that the Appellant blamed herself for the Appellee's alcohol consumption and believed that there was something wrong with her since she could not stop her husband from drinking alcohol. The Appellant also presented evidence from Dr. William C. Mercer indicating that she suffered from chronic fatigue syndrome, fibromyalgia, and TMJ disfunction.

3. The family law master also explained as follows:

He could be the biggest son of a gun in the world it isn't going to change the amount of alimony. Alimony in my mind is based on the primary factor in considering the award of alimony is financial need versus the ability to pay. And a really nice guy who you just wake up one morning and say I don't want to be married to anymore is going to pay the same amount of alimony to you as a horrible nasty two headed ogre is going to pay to you. The fault has no bearing. Where you would have to prove fault is if he wouldn't admit irreconcilable differences just to get the divorce.

ing habits, and concluded that "[t]he evidence clearly established that any alleged fault by the [Appellee] was condoned by the acts of the [Appellant]."

The family law master and lower court ultimately concluded that the evidence did not establish habitual drunkenness.[4] However, we must also be cognizant of the Appellant's contentions that the family law master's comments regarding the irrelevance of the fault issue precluded her from introducing additional evidence of fault.[5]

The family law master's comments regarding the role of fault in the determination of alimony evidence a misapprehension of applicable law which we cannot simply ignore. We have previously explained that fault as a ground for divorce and fault as an element in the determination of alimony are separate inquiries. In *Durnell v. Durnell*, 194 W.Va. 464, 460 S.E.2d 710 (1995), we recognized that while evidence of misconduct, adultery in that case, may not be sufficiently proven to "serve as a ground for granting a divorce[,]" such issue is still a valid consideration in the determination of alimony.[6] *Id.* at 468, 460 S.E.2d at 714. Based upon the principles of *Durnell*, we observed in *Hillberry v. Hillberry*, 195 W.Va. 600, 466 S.E.2d 451 (1995), that "the analysis of comparative fault issues becomes a two-prong inquiry;[7] first, evidence must be evaluated for its potential as a ground for divorce, and second, evidence must be evaluated as it impacts upon the amount of alimony, if any, to be awarded." *Hillberry*, 195 W.Va. at 605–606, 466 S.E.2d at 456–57.

 West Virginia Code § 48–2–15(i) (1995) provides, in pertinent part, as follows:

In determining whether alimony is to be awarded, or in determining the amount of alimony, if any, to be awarded under the provisions of this section, the court shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.

In implementing West Virginia Code § 48–2–15(i), we stated the following in syllabus point one of *Durnell*:

W.Va.Code, 48–2–15(i) (1991), bars a person from alimony in only three instances: (1) where the party has committed adultery; (2) where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final; and (3) where the party has actually abandoned or deserted the other spouse for six months. In those other situations where fault is considered in awarding alimony under W.Va.Code, 48–2–15(i), the court or family law master shall consider and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship.' Syllabus point 2, *Rexroad v. Rexroad*, 186 W.Va. 696, 414 S.E.2d 457 (1992).

Syllabus point one of *Charlton v. Charlton*, 186 W.Va. 670, 413 S.E.2d 911 (1991), instructs: "In enacting our equitable distribution statute, the Legislature did not intend fault to be considered as a factor in determining the division of marital property. However, the Legislature did designate marital fault as a factor to be considered in awarding alimony[8] under the provisions of

---

4. Habitual drunkenness is one of the enumerated grounds for divorce under West Virginia Code § 48–2–4 (1995).

5. Although there was no formal ruling by the family law master precluding such evidence, her comments certainly had a chilling effect on the introduction of such evidence.

6. Economic need remains the primary focus in determining whether alimony should be ordered, and if so in what amount. *F.C. v. I.V.C.*, 171 W.Va. 458, 460, 300 S.E.2d 99, 101–02 (1982).

7. In *Hillberry*, as in the present case, the divorce complaint alleged fault. The first prong of this inquiry would be unnecessary where the divorce is not sought on fault grounds.

8. West Virginia Code section 48–2–16(b) also sets forth factors to be utilized in the determination of alimony and provides, in pertinent part, as follows:

The court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered under the provisions of sections thirteen and fifteen of this article, as a supplement to or in lieu of the separation agreement:
(1) The length of time the parties were married;

W.Va.Code, 48–2–15(i)." [9]

■ We find that the family law master and the lower court misapplied the law regarding the role of fault in the determination of the amount of alimony to be awarded. The Appellant's contention that the family law master's comments prevented her from introducing evidence of drunkenness is questionable based upon the fact that the Appellant did introduce some evidence of habitual drunkenness, as recited above. However, we do accept that the Appellant was placed in a difficult position as a result of the family law master's erroneous assertions concerning the irrelevance of the issue of fault. Based upon the misapprehension of the law by the family law master and the confusion this statement created for the Appellant, we remand this matter for a determination of the existence and extent of the Appellee's fault and for a determination of the amount of alimony based upon the results of that inquiry.[10]

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

9. Indeed, we have even held that evidence of very aggravated marital fault may justify the award of premium fault alimony. In syllabus point four of *Rogers v. Rogers*, 197 W.Va. 365, 475 S.E.2d 457 (1996), for instance, we explained:

In appropriate circumstances, an enhancement of an award of maintenance/alimony based on the degree of fault is justified. Enhancement of a maintenance/alimony award by a fault premium may be awarded when additional support is required to reimburse the injured spouse for expenses directly related to the fault or to assure that the injured spouse continues to have the standard of living enjoyed during the marriage. A fault premium may also be applied to discourage the fault or behavior that contributed to the dissolution of the marriage. In determining an award of maintenance/alimony enhanced by a fault premium, the circuit court must consider the concrete financial realities of the parties.

10. Likewise, on remand, the Appellee has equal opportunity to present evidence of any alleged fault of the Appellant.

## IV.

## CONDONATION

The Appellee contends that the Appellant condoned his alcohol consumption, demonstrated by the fact that she engaged in sexual relations with him subsequent to her knowledge of his alleged excessive consumption of alcohol. The basis for the condonation defense appears to be the statutory pronouncement, in West Virginia Code § 48–2–14 (1996), that "[n]o divorce for adultery shall be granted ... when it appears that the parties voluntarily cohabited after the knowledge of the adultery...." In *DeBerry v. DeBerry*, 115 W.Va. 604, 177 S.E. 440 (1934), we stated that "voluntary cohabitation of the parties after knowledge of the adultery charged, whether regarded as condonement or not, is a conclusive defense." *Id.* at 606, 177 S.E. at 441. In reliance upon the princi-

ples in *DeBerry*, this Court, in *M.S.P. v. P.E.P.* 178 W.Va. 183, 358 S.E.2d 442 (1987), explained that "[i]f an injured party has knowledge of conduct upon which a divorce could be granted and thereafter lives and cohabits with the offending party, then the injured party cannot use the earlier misconduct as a basis for divorce." *Id.* at 187, 358 S.E.2d at 446. The objectionable conduct in *M.S.P.* was also adultery. Other than one obscure reference to condonation within the context of cruelty as a ground for divorce almost fifty years ago in *Kessel v. Kessel,* 131 W.Va. 239, 46 S.E.2d 792 (1948), this Court has not had occasion to apply the concept of condonation to habitual drunkenness or any fault ground other than adultery.[11] We do not address the issue of whether condonation is an available defense to fault grounds other than adultery, as that question is unnecessary to a resolution of the issue before us.

■ As the foregoing cases indicate, the condonation defense has not been applied as a defense to fault within the context of a determination of appropriate alimony. Thus, in determining the level of fault or misconduct, pursuant to West Virginia Code § 48–2–15(i), for the purpose of setting the amount of alimony, neither the statutes nor case law make condonation a factor to be considered by the court.

## V.

## VALUATION AND DISTRIBUTION OF PROPERTY

■ The Appellant specifies multiple errors regarding valuation and distribution of property. Falling within the realm of factual determinations, we leave those matters to the family law master and lower court and reverse only where a clearly erroneous factual determination has been made, pursuant to syllabus point one of *Burnside,* as quoted above. Finding no clear error, we affirm the decisions regarding valuation and distribution of property.

## VI.

## ATTORNEY FEES

■ The Appellant also contends that the lower court erred in failing to award her attorney fees, based upon her health problems which allegedly limit her ability to produce income. In syllabus point five of *Rogers v. Rogers,* 197 W.Va. 365, 475 S.E.2d 457 (1996), we explained as follows:

"In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syl. pt. 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

Consequently, pursuant to *Rogers,* the degree of fault is specifically considered within the determination of attorney fees. Thus, on remand, the determinations of the lower court regarding fault, after additional hearing on that subject, shall affect not only the award of alimony but also the award of attorney's fees.

---

11. Historically, the concept of condonation has been applicable in matters of adultery, and knowledge of adultery prior to continued marital relations. West Virginia Code § 48–2–14, as quoted above, addressed condonation only within the context of voluntary cohabitation after knowledge of adultery, and we are not persuaded that the concept of condonation should be enlarged in this case to include the alleged condonation of habitual drunkenness. In *Kessel v. Kessel,* 131 W.Va. 239, 46 S.E.2d 792 (1948), this Court addressed the concept of condonation within the context of cruelty as a ground for divorce and explained: "If, after her return, the husband had resumed his acts of cruelty, he could not then have relied on the condonation...." *Id.* at 246, 46 S.E.2d at 796. *Kessel,* however, was based upon a prior version of West Virginia Code § 48–2–14 which provided: "Nor shall a divorce be granted for any cause when it appears that the suit has been brought by collusion, or that the offense charged has been condoned...."

## VII.

### CONCLUSION

Based upon the foregoing and our review of factual determinations on a clearly erroneous standard, we affirm the lower court's decision on the factual matters regarding characterization and valuation of property, as well as distribution of marital property. With regard to the lower court's failure to consider any fault as a factor in the determination of alimony or attorney's fees, however, we reverse the decision and remand for further proceedings to evaluate the degree of fault and to incorporate that element into the determination of alimony and attorney's fees.

Affirmed in part; reversed in part; and remanded.