[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
September 11, 2003
**THOMAS K. KAHN**
**CLERK**

———————————————

No. 02-14899

———————————————

D. C. Docket No. 02-00546-CV-D-N

JOHN DOE, proceeding
anonymously,
THOMAS ROE, proceeding
anonymously,
JANE POE, proceeding
anonymously,
J.B., proceeding
anonymously,

Plaintiffs-Appellants,

versus

WILLIAM H. PRYOR, JR.,
in his official capacity as
Attorney General of the
State of Alabama,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Middle District of Alabama

———————————————

**(September 11, 2003)**

Before EDMONDSON, Chief Judge, CARNES, Circuit Judge, and CARNES[*], District Judge.

CARNES, Circuit Judge:

This is a gay rights standing case which began before <u>Lawrence v. Texas</u>, 539 U.S. __, 123 S. Ct. 2472 (2003), but which we decide in light of that decision. At the center of the case is an Alabama statute which criminalizes "deviate sexual intercourse," defined as "[a]ny act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another," Ala. Code § 13A-6-65(a)(3); § 13A-6-60(2). In the wake of the <u>Lawrence</u> decision the statute has been declared dead by the Alabama Attorney General, who as the chief law enforcement officer of the state ought to know. But the corpse is not dead enough to suit the plaintiffs, who want the federal courts to drive a stake through its heart by adding our pronouncement to the Attorney General's. For the reasons that follow, they don't have standing to get us to speak on the subject beyond what we must say in order to dispose of their appeal from the district court's dismissal of their complaint for lack of standing.

_____

[*]Honorable Julie E. Carnes, United States District Judge for the Northern District of Georgia, sitting by designation.

# I

The anonymous plaintiffs in this case are two gay men proceeding as John Doe and Thomas Roe and two lesbians proceeding as Jane Poe and J.B. All four plaintiffs contend that the Alabama statute in question violates their First Amendment rights. J.B. makes the additional claim that it violates her right to equal protection.[1]

J.B.'s equal protection claim has its genesis in an Alabama state court custody proceeding. The facts of that proceeding are set out in full in J.B.F. v. J.M.F., 730 So. 2d 1186 (Ala. Civ. App. 1997), and Ex parte J.M.F., 730 So. 2d 1190 (Ala. 1998). We will give only a Cliffs Notes version of them here, which is all that is necessary to frame the standing issue.

In January of 1993, J.B. and her husband divorced and she received custody of their then three-year-old daughter. After the divorce, J.B. began a lesbian relationship, and J.B. and the child moved in with her partner in April of 1993. J.B.'s former husband knew of her lesbian relationship but initially thought that J.B. and her partner were pretending to be "roommates" and keeping the true nature of their relationship from the child. He later found out that they were

---

[1]In the district court, Doe, Roe, and Poe each presented an equal protection claim, too, but they have abandoned their equal protection claims on appeal, limiting their appeal "to their standing to pursue their First Amendment claims." Brief of Appellant at 3 n.1.

actually living in an open lesbian relationship and not hiding it from the child. After discovering the true circumstances surrounding J.B.'s relationship, the former husband, who had since remarried, felt that he could provide a more stable and beneficial environment for their child than J.B. could. On December 9, 1994, he filed a petition to modify the custody order, claiming that circumstances had changed since the divorce and asking to have the child, who was then four years old, placed in his custody.

Finding that there were changed circumstances supporting an alteration in custody for the benefit of the child, the trial court ordered that the child be placed with J.B.'s former husband and also ordered J.B. not to visit the child in the presence of her lesbian partner. J.B. appealed both the custody and visitation restriction aspects of the trial court order. The Alabama Court of Civil Appeals reversed on the custody issue which made it unnecessary to reach the visitation issue. J.B.F. v. J.M.F., 730 So. 2d at 1190.

The Alabama Supreme Court then reversed the Court of Civil Appeals, concluding in the process that J.B.'s former husband had shown two changed circumstances warranting the trial court's determination that the child should be placed in his custody. First, he had remarried and thus could provide a stable environment in which there were parents of both sexes. Second, J.B. had chosen a

4

lifestyle that "is neither legal in this state, nor moral in the eyes of most of its citizens," and thus she was "unable, while choosing to conduct an open cohabitation with her lesbian life partner, to provide [the] benefit" of a "loving home environment that is anchored by a successful marriage." Ex parte J.M.F., 730 So. 2d at 1196 (citation and internal quotation marks omitted).

The Alabama Supreme Court decided that in view of those changed circumstances, the trial court had not abused its discretion in finding that "the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child." Id. at 1194. In support of its decision to uphold the trial court's change-in-custody ruling, the Court cited in a footnote section 13A-6-65(a)(3), which it characterized as criminalizing "all homosexual conduct." Id. at 1196 n.5.

Because the Court of Civil Appeals had not reached the visitation issue, the Alabama Supreme Court remanded the case to that court for a determination of whether the restriction on visitation was proper. Id. at 1196. On remand, the Court of Civil Appeals held that the restriction on visitation was proper, because "[a]s we consider the opinion of the supreme court, it effectively prevents the child from being in the presence of the mother's companion under any circumstances." J.B.F. v. J.M.F., 730 So. 2d 1197, 1197 (Ala. Civ. App. 1998).

5

## II

J.B. filed this action against the Alabama Attorney General in his official capacity, challenging section 13A-6-65(a)(3). She claimed that the statute violates both the Equal Protection Clause of the Fourteenth Amendment and the First Amendment. Doe, Roe, and Poe joined with J.B. in challenging the constitutionality of section 13A-6-65(a)(3) because they feared "its continued use and enforcement by Alabama officials against lesbians and gay men." Brief of Appellant at 5.

The Attorney General filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. The district court granted the Rule 12(b)(1) part of the motion, concluding that none of the plaintiffs had alleged facts in the complaint sufficient to give them standing to challenge section 13A-6-65(a)(3).

The plaintiffs then filed a motion for reconsideration, which included an alternative request for leave to amend their complaint, although the grounds for the amendment were not specified. The district court denied that motion as well. J.B., Doe, Roe, and Poe all appeal the district court's ruling that they lacked standing to challenge section 13A-6-65(a)(3) on First Amendment grounds and its denial of their motion for reconsideration. J.B. also appeals the district court's conclusion

that she lacked standing to challenge section 13A-6-65(a)(3) on equal protection grounds.

## III

We review <u>de novo</u> the district court's grant of a motion to dismiss the complaint, taking as true the facts as they are alleged in the complaint. <u>Covad Communication Co. v. BellSouth Corp.</u>, 299 F.3d 1272, 1276 n.2 (11th Cir. 2002). The three-part test we apply to determine if a plaintiff has standing to bring suit in federal court is this familiar one:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992) (citations, footnote, and some internal marks omitted). The district court dismissed this case at the pleading stage, so "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to

7

support the claim." Id. at 561, 112 S. Ct. at 2137 (citation and internal marks omitted).

A.

We start with the issue of J.B.'s standing to challenge the constitutionality of section 13A-6-65(a)(3) on equal protection grounds. J.B. alleges four distinct injuries. According to her: she had her child removed from her custody; she is not able to visit her child in the presence of her lesbian partner; she was subjected to a custody proceeding where the illegality of her conduct under an unconstitutional statute was used against her in the proceeding; and she suffered the stigma of being "declared a criminal" by the Alabama Supreme Court. In any event, all of her alleged injuries arise out of the Alabama custody proceeding. Even if we assume that all of those alleged injuries meet the Lujan injury-in-fact requirement, she still does not have standing to bring this claim because her injuries are not fairly traceable to the Alabama Attorney General and they cannot be redressed through this action against him.

None of J.B.'s alleged equal protection injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (internal marks omitted) (emphasis added). The only defendant in this case is the

8

Alabama Attorney General, and the only injuries J.B. has alleged stem from a state court custody proceeding in which the Attorney General played no role. The Attorney General has taken no action to enforce section 13A-6-65(a)(3) against J.B. He has not threatened to enforce the statute against her, either. To the contrary, in the wake of the Supreme Court's Lawrence decision, he now concedes that section 13A-6-65(a)(3) is unconstitutional, in his words, "to the extent that it applies to private, legitimately consensual anal and oral sex between unmarried persons," Supp. Brief of Appellee at 1, which is the only kind J.B.'s allegations cover. Because there is no "challenged action" by the Attorney General, J.B.'s injuries are not "fairly traceable" to the only defendant before the Court.

J.B.'s injuries also are not redressable through this lawsuit against the Alabama Attorney General. An injunction preventing the Attorney General from enforcing a statute that he concedes cannot be enforced would do nothing to change the result J.B. suffered in the state court custody proceeding. Nothing the Attorney General could be ordered to do or refrain from doing would redress the injuries J.B. alleges. See Hope Clinic v. Ryan, 249 F.3d 603, 605-06 (7th Cir. 2001) (holding that the plaintiffs did not have standing to challenge state laws authorizing private suits for damages where only the state attorney general is named in the suit because "[the state attorney general] cannot cause the plaintiffs

9

injury by enforcing the private-action statutes [and] any potential dispute plaintiffs may have with future private plaintiffs could not be redressed by an injunction running only against public prosecutors").

It's not just a matter of the wrong defendant. The federal courts cannot make it likely that the Alabama courts will redress J.B.'s injuries, no matter who is named as defendant in this suit. J.B. says that her injuries were caused by the Alabama Supreme Court's use of an unconstitutional criminal statute in its analysis of her right to custody of her child. She concedes, as she must, that the Rooker-Feldman doctrine precludes our review of that custody determination itself. She contends, however, that this lawsuit is a general challenge to the constitutionality of the provision used against her, as permitted by District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-86, 103 S. Ct. 1303, 1315-17 (1983), and not a direct challenge to the results of the proceeding. She argues that we can redress her injuries through such a suit because a decision from this Court declaring section 13A-6-65(a)(3) unconstitutional would likely enable her to reopen the custody proceeding and have the custody determination made without regard to section 13A-6-65(a)(3).

The flaw in her reasoning is its premise that our decisions bind the Alabama courts to decide cases in accordance with them. They do not. The only federal court whose decisions bind state courts is the United States Supreme Court. See

10

Glassroth v. Moore, 335 F.3d 1282, 1302 n.6 (11th Cir. 2003) ("[S]tate courts when acting judicially, which they do when deciding cases brought before them by litigants, are not bound to agree with or apply the decisions of federal district courts and courts of appeal.") (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 58 n.11, 117 S. Ct. 1055, 1064 n.11 (1997); Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996)); see also State v. Dwyer, 332 So. 2d 333, 334-35 (Fla. 1976) (Florida courts were bound by the Florida Supreme Court's decision that a statute of that state is constitutional even though the Fifth Circuit had since declared the same statute unconstitutional). And the Supreme Court has already spoken on the subject in the Lawrence case. If J.B. has a reason for believing that the Alabama courts would pay more attention to a decision from a district court or this Court – both of which are "inferior Courts" of the federal system, see U.S. Const. Art. III, § 1 – than to one from the United States Supreme Court, she has not shared it with us.

If J.B. moves to reopen her custody proceeding, she can present to the Alabama courts the Supreme Court's Lawrence decision and the Alabama Attorney General's concession in this case that under that decision section 13A-6-65(a)(3) is unconstitutional as it might be applied to her. If that does not convince the Alabama courts of the proposition, nothing we say or do could convince them either. Speculation is not enough to base standing upon, Lujan, 504 U.S. at 561,

11

112 S. Ct. at 2136, and J.B.'s insistence that a decision of this Court or a federal district court can do for her what the Supreme Court's <u>Lawrence</u> decision cannot do is not only speculative, but is also hard for us to believe.   She does not have standing to bring an equal protection challenge to section 13A-6-65(a)(3) based upon the consideration that the Alabama Supreme Court gave to that statute during her custody proceeding.

B.

Nor does J.B. or the other plaintiffs have standing to challenge section 13A-6-65(a)(3) on First Amendment grounds.  They argue that they do because there is a credible threat of enforcement of the statute and because their expression has been chilled by the statute.  We have held, however, that to establish an injury in fact under <u>Lujan</u> based upon chilled expression, the plaintiffs must show "'that either (1) [they were] threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution.'" <u>Pittman v. Cole</u>,  267 F.3d 1269, 1283-84  (11th Cir. 2001) (quoting <u>ACLU v. Florida Bar</u>, 999 F.2d 1486, 1492 (11th Cir. 1993)).  They have not shown and cannot show any of that.

They concede they have not been threatened with prosecution.  A prosecution is not likely, and there is no credible threat of enforcement.  The plaintiffs allege in their complaint that each plaintiff "has a genuine fear of arrest and prosecution under § 13A-6-65(a)(3)," but later in the complaint they allege that

12

the statute is "rarely enforced, but threatening."  There is nothing in the record on appeal to indicate when the statute was last enforced, and it seems that neither party knows.  Apparently, it has been years and years. The plaintiffs have alleged nothing more than a "subjective fear that [they] may be prosecuted for engaging in expressive activity," which we have held is not enough. <u>Wilson v. State Bar of Ga.</u>, 132 F.3d 1422, 1428-29 (11th Cir. 1998).  The complaint contains no allegations which will support a conclusion that their fear is objectively reasonable, and a fear of prosecution "will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." <u>Id.</u> at 1428.

Besides, we are not going to turn a blind eye to recent events which establish that there is no credible threat of enforcement of section 13A-6-65(a)(3).  The United States Supreme Court has held that statutory prohibitions on consensual sodomy like the Alabama statute are unconstitutional because they infringe upon the rights of "adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment." <u>Lawrence</u>, 539 U.S. at __, 123 S. Ct. at 2476.[2]  The Alabama Attorney General has expressly conceded

---

[2]The Supreme Court made plain in <u>Lawrence</u> that its holding applies to statutory provisions prohibiting both heterosexual and homosexual consensual sodomy, as Alabama's statute does, by invalidating the Texas statute on due process instead of equal protection grounds: "Were we to hold the statute invalid under the Equal Protection Clause some might question whether a prohibition would be valid if drawn differently, say, to prohibit the conduct both between same-sex and different-sex participants." <u>Lawrence</u>,539 U.S. at __, 123 S. Ct. at 2482.

in supplemental briefing to this Court that the Supreme Court's decision in Lawrence renders section 13A-6-65(a)(3) unconstitutional "to the extent that it applies to private, legitimately consensual anal and oral sex between unmarried persons," Supp. Brief of Appellee at 1, which is all that these plaintiffs allege they are concerned about. The Alabama Attorney General is the chief law enforcement officer of the state and has supervisory authority over every district attorney in Alabama. See Ala. Code § 36-15-14; Graddick v. Galanos, 379 So. 2d 592, 594 (Ala. 1980). Because there is no credible threat of enforcement of section 13A-6-65(a)(3), the plaintiffs have no standing to challenge that statute on First Amendment grounds.

## IV

J.B., Doe, Roe, and Poe also argue that the district court abused its discretion when it denied their motion for leave to amend their complaint, included as an alternative in their motion for reconsideration. We conclude that the district court did not abuse its discretion in denying their motion for leave to amend. In order to properly request leave to amend a motion must "set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999). The plaintiffs' motion for reconsideration

14

or, in the alternative, leave to amend contained neither the proposed amendment nor the substance of it.

AFFIRMED.